ELISABETH M. BRUCE
AMANDA K. TOMACK
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Telephone: (202) 598-0969
Fax: (202) 514-6866
Elisabeth.M.Bruce@usdoj.gov
Amanda.Tomack2@usdoj.gov

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re | : | |
| | : | |
| 20230930-DK-BUTTERFLY-1, INC. f/k/a/ | : | Chapter 11 |
| | : | |
| Bed Bath & Beyond, Inc., et. al., | : | Case No. 23-13359 (VFP) |
| | : | |
| Debtors. | : | |
| | : | |
| MICHAEL GOLDBERG as | : | |
| Plan Administrator for 20230930-DK- | : | |
| BUTTERFLY-1, INC. f/k/a | : | |
| Bed Bath & Beyond Inc., | : | Adv. Pro. No. 24-01533 (VFP) |
| | : | |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| INTERNAL REVENUE SERIVCE, | : | |
| Agency of the United States of America | : | |
| (Internal Revenue Service), | : | |
| | : | |
| Defendant. | : | |
| | : | |

**UNITED STATES' MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

1

The United States files this Memorandum of Law in Support of Its Motion to Dismiss the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and in support states as follows:

## PRELIMINARY STATEMENT

Bed Bath & Beyond, Inc. ("BBB" or "Debtor") elected on its 2018 and 2019 federal income tax returns to calculate its deduction for charitable contributions under the method authorized for certain qualified contributions by 26 U.S.C. § 170(e)(3).[1] It later sought to change that election when it determined that an alternative method would be more tax advantageous on account of subsequent events that led to significant loss of profits and ultimately filing bankruptcy. Having made an election on its 2018 and 2019 original tax returns, BBB could not change it without the consent of the Commissioner pursuant to the election doctrine and it is not entitled to the tax refunds it seeks. The Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Further, under the variance doctrine, BBB cannot now advance any theory of recovery that was not alleged in its amended return. Thus, BBB is not entitled to the tax refunds it seeks for 2018 and 2019 and the Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Even if the Court finds that BBB can change its method of computing its charitable contribution deductions, BBB cannot bring this suit at this time because it has not yet made a

---

[1] BBB refers to its tax return for the tax period ending March 3, 2018, as its 2018 tax return. It refers to its tax return for the tax period ending March 2, 2019, as its 2019 tax return. The tax period ending March 3, 2018, was BBB's 2017 tax year and the tax period ending March 2, 2019, was its 2018 tax year. However, to avoid confusion, we use the same terms as the Complaint throughout this brief.

2

formal claim for refund with the IRS. It failed to allege sufficient facts in its amended 2018 and 2019 tax returns to constitute a claim for refund. And it is highly unlikely that BBB could have alleged sufficient facts to support its claim for refund as all the inventory it allegedly donated must have been comprised of inventory acquired in the tax year in which the refunds were claimed. Thus, the Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for BBB's failure to exhaust its administrative remedies.

## BACKGROUND

On its 2018 and 2019 federal income tax returns, BBB claimed deductions for charitable contributions which it calculated using the enhanced method for qualified charitable contributions under 26 U.S.C. § 170(e)(3). Compl. ¶ 13. Under the enhanced method for calculating charitable contributions, a taxpayer may deduct its tax basis in qualifying donations of inventory plus half the gain that would have been recognized in income if the inventory had been sold at its fair market value on the date of contribution, limited to twice its tax basis. 26 U.S.C. § 170(e)(3)(B); Treas. Reg. § 1.170A-4A(c). *See also Lucky Stores v. Commissioner*, 105 T.C. 420, 427 (1995).

BBB later amended its 2018 and 2019 federal income tax returns and calculated the deduction for its charitable contributions using the basic method under 26 U.S.C. § 170(e)(1). Compl. ¶ 18. Under section 170(e)(1),[2] a taxpayer may include the costs of donated inventory in its cost of goods sold and may deduct that cost under section 162 as an ordinary business expense. Treas. Reg. § 1.170A-1(c)(4). However, the taxpayer may only include the costs of donated inventory which were acquired in the same taxable year as the donation. *Id.*

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code, Title 26, United States Code.

3

BBB stated that it was amending its returns because it had originally "elect[ed]" to apply the enhanced deduction under section 170(e)(3) and now wished to recompute its charitable contribution deduction using the basic method under section 170(e)(1). *See* Mem. of Disallowance, Ex. A to Compl. The IRS disallowed the refunds shown on the amended 2018 and 2019 tax returns for two reasons. *Id.* First, BBB made an irrevocable election when it filed its original 2018 and 2019 tax returns to compute its deduction for charitable contributions under the method prescribed in section 170(e)(3). *Id.* After such an election is made, it may only be changed with the consent of the Commissioner. *Id.* Second, BBB failed to allege sufficient facts to establish a claim for refund as required by Treas. Reg. § 301.6402-2(b)(1) because it did not allege that the donated inventory included in its cost of goods sold had been acquired in the same tax year as it was donated. *Id;* 1.170A-1(c)(4). For these reasons, the Court should dismiss the Complaint.

## ARGUMENT

**I.     BBB Irrevocably Elected to Apply the Enhanced Method for Computing Its Charitable Contribution Deduction.**

BBB has failed to state a claim upon which relief can be granted because the doctrine of election prevents BBB from unilaterally changing its method of computing its charitable contribution deductions. Under the doctrine of election, taxpayers' elections are binding after the period for filing expires and they cannot be changed thereafter without the consent of the Commissioner. *Pacific National Co. v. Welch*, 304 U.S. 191, 194-95 (1938). This prevents taxpayers from frequently changing and inconsistently applying accounting methods to avoid tax liability. *Poorbaugh v. United States*, 423 F.2d 157, 164 n. 29 (3d Cir. 1970) ("The consistent use of an accounting procedure is necessary in order to prevent burdensome adjustments for prior

years and to prevent a taxpayer from changing the treatment of certain items from year to year in order to avoid tax liability.")

A taxpayer makes an election when it: (1) makes a free choice between two or more alternatives and (2) communicates that choice to the Commissioner through an overt act. *Grynberg v. Commissioner*, 83 T.C. 255, 261 (1984). In *Grynberg*, the taxpayer made an election with regard to its charitable contribution deductions when it chose one of two alternative methods of computing the deduction and subsequently claimed the computed amount on its tax returns. 83 T.C. 262. The taxpayer did not need to submit a statement or narrative describing their election; including the deduction on its return using the chosen computation method was sufficient to constitute an overt act. *Id.*

Here, like *Grynberg*, BBB made an election on its original 2018 and 2019 tax returns. BBB had the free choice to apply the method of computing its charitable contribution deductions under section 170(e)(1) or section 170(e)(3) and it made an overt act by computing the deduction using its chosen method and claiming the corresponding deduction amount on its return.

While there are some exceptions to the doctrine of election, none apply here. A material mistake of fact underlying the original election is an exception to the doctrine of election, but a taxpayer cannot revoke an election simply because of an unforeseen change of circumstances. *Grynberg*, 83 T.C. at 262 ("unexpected subsequent events" are "insufficient to mitigate the binding effect of elections made"); *see also United States v. Helmsley*, 941 F.2d 71, 86 (2d Cir. 1991) ("Under the doctrine of election, a taxpayer who makes a conscious election may not, without the consent of the Commissioner, revoke or amend it merely because events do not unfold as planned.").

5

BBB made an irrevocable election on its 2018 and 2019 tax returns to calculate its charitable contributions using the enhanced method prescribed in section 170(e)(3). It cannot now change this election without the consent of the Commissioner and the IRS correctly disallowed the refunds claimed on its 2018 and 2019 amended tax returns. Thus, BBB has failed to state a claim upon which relief can be granted and the Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

## II.   BBB Is Not Entitled to Relief on Any Grounds Other Than Those Alleged in its Amended Returns.

BBB makes vague allegations in the Complaint that it may be entitled to alternative relief if the Court determines that the election doctrine prohibits it from changing its method of computing its charitable contribution deductions. Compl. ¶¶ 27-28. However, pursuant to the variance doctrine, BBB is not entitled to relief on any grounds other than the grounds it alleged in its amended returns.

The variance doctrine provides that, in a refund suit, any relief a taxpayer seeks is limited to the grounds stated in its administrative request for refund. *Friedmann v. United States*, 107 F. Supp. 2d 502, 505 (D.N.J. 2000) (the variance doctrine "precludes a taxpayer from raising issues in a refund action that were not previously advanced in the taxpayer's original refund claim").[3] Thus, all grounds upon which a taxpayer relies must be stated in the original refund claim and anything not raised at that time cannot be raised in the refund suit. *Real Estate-Land Title & Trust Co. v. United States*, 309 U.S. 13, 18 (1940) (when petitioner's "claim for refund was

---

[3] *See also Bank of New York v. United States*, 526 F.2d 1012, 1019 (3d Cir. 1975) (barring taxpayer from defending deductions on different grounds from those stated in administrative refund claim); *Quarty v. United States*, 170 F.3d 961, 972-73 (9th Cir. 1999) (barring ex post facto claim in refund suit where not raised in refund claim); *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992) (precluding litigation of marketing assets claim not mentioned in taxpayer's refund claim).

based exclusively and solely on the ground that it was entitled to an allowance for obsolescence," it was "precluded […] from resting its claim on another ground").

BBB's claim that it is entitled to a refund based on its change in computation method for its charitable contribution deductions fails because of the election doctrine. And the Court lacks jurisdiction over any alternative theories which BBB did not advance in its amended returns. Thus, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1).

### III.     BBB Did Not Make a Formal Claim for Refund

#### A.     BBB Must Submit a Valid Claim for Refund Before Filing Suit.

Even if the Court determines that BBB's claims are not barred by the election doctrine, BBB is not entitled to a refund for 2018 or 2019 because it failed to first submit a valid claim for refund with the IRS. Outside of bankruptcy, the need to file a claim for refund with the IRS before filing a suit is "unusually emphatic." *United States v. Brockamp*, 519 U.S. 347, 350 (1997); 26 U.S.C. §§ 6511, 7422. The requirement to file a claim for refund is necessary "to advise the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue…, to provide that refund claims are made promptly, and to allow the IRS to avoid unnecessary litigation by correcting conceded errors." *United States v. Clintwood Elkhorn Min. Co*., 553 U.S. 1, 11 (2008) (internal citation and quotation marks omitted).

This requirement is incorporated into the Bankruptcy Code. Under 11 U.S.C. § 505(a)(2) the court may not determine "any right of the estate to a tax refund, before the earlier of— (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or (ii) a determination by such governmental unit of such request." The Third Circuit has held this limitation is jurisdictional, and it deprives the court of

7

subject-matter jurisdiction until the debtor complies. *In re Custom Distrib. Servs. Inc.*, 224 F.3d 235, 239-240, 243–44 (3d Cir. 2000).

A taxpayer's refund claim must meet certain requirements set by the IRS to qualify as a sufficient claim and any request that does not comply with treasury regulations is not considered a valid claim. *McGeady v. United States*, No. CIV.A. 02-7765, 2003 WL 1870472, at *2 (E.D. Pa. Feb. 27, 2003). Treasury Regulations setting forth those requirements "are calculated to avoid dilatory, careless, and wasteful fiscal administration by barring incomplete or confusing claims." *Angelus Milling Co. v. Comm'r.*, 325 U.S. 293, 297 (1945). The regulation first includes a specification requirement which states that the claim must "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402-2(b)(1). The regulation further requires that the grounds and facts presented in the refund claim are "verified by a written declaration that is made under the penalties of perjury." *Id*. "When a claim does not comply with these criteria it will not be considered for any purpose as a claim for refund or credit." *Chadwell v. Rettig*, No. 3:20-cv-09008-GC-LHG, 2023 WL 7103366, at *3 (D.N.J. Oct. 27, 2023) (internal quotations omitted).

Courts have held that an amended return alone does not constitute a sufficient claim for refund. *See e.g., Chadwell*, 2023 WL 7103366, at *4 (holding that an amended tax return did not constitute a valid claim for refund because it failed to include the information required by the Treasury regulation); *Gillespie v. United States*, 670 F. App'x 393, 395 (7th Cir. 2016) (holding that an amended return did not constitute a claim for refund because "it lack[ed] an honest and reasonable intent to supply the information required by the tax code") (internal citations omitted); *McGeady*, 2003 WL 1870472, at *2 (E.D. Pa. Feb. 27, 2003) (holding that an

8

amended return was not a valid claim for refund because it did not "set forth detailed facts supporting [the] claim for a refund").

### B. BBB's Amended Returns Did Not Allege Sufficient Facts to Constitute a Claim for Refund.

Here, BBB's amended returns failed to set forth sufficient facts supporting its claim for refund. The IRS notified BBB of this failure to allege sufficient facts when it disallowed BBB's refunds claimed on the amended returns. *See* Mem. of Disallowance, Ex. A to Compl. As the IRS stated in its notices of disallowance, BBB can claim the cost basis of donated inventory only when the inventory is produced or acquired in the same taxable year as it was donated. *Id.;* Treas. Reg. § 1.170A-1(c)(4). Thus, BBB must have alleged in its amended returns that it acquired or produced the donated inventory in the same taxable year as the donation. *Id.*; Treas. Reg. § 301.6402-2(b)(1).

The burden is on BBB to satisfy the factual timeline in its refund claim and BBB did not meet this burden. In fact, BBB's original returns undermine its current position. With the original returns, BBB filed Form 8283 *Noncash Charitable Contribution* which requests the donor to specify the date the charitable property was acquired. *See* Mem. of Disallowance, Ex. A to Compl. For both tax periods, 2018 and 2019, BBB listed "various" in the designated column responding to the date the charitable property was acquired. *Id.* BBB did not provide any clarity or elaborate on the timeline in its amended returns. *Id.* At a minimum, BBB needed to state that all charitable inventory was acquired during the periods for which the refund claims cover. BBB failed to provide such information. Thus, because the amended returns do not set forth sufficient facts to form the basis for a refund claim, the court lacks subject matter jurisdiction to determine BBB's purported refund claim under 11 U.S.C. § 505(a)(2) and the Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(1)

9

## CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.

Date: October 18, 2024,

                                                Respectfully submitted,

                                                DAVID A. HUBBERT
                                                Deputy Assistant Attorney General

                                                */s/ Elisabeth M. Bruce*
                                                ELISABETH M. BRUCE
                                                AMANDA K. TOMACK
                                                U.S. Department of Justice
                                                P.O. Box 227
                                                Washington, D.C.  20044
                                                Telephone: (202) 598-0969
                                                Fax: (202) 514-6866
                                                Elisabeth.M.Bruce@usdoj.gov
                                                Amanda.Tomack2@usdoj.gov
                                                *Counsel for the United States*