| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br><br> Steven Wirth <br> Peter O. Larsen (admitted *pro hac vice*) <br> Raye Elliott (admitted *pro hac vice*) <br> Stefi George (admitted *pro hac vice*) <br> 401 East Jackson Street, Suite 1700 <br> Tampa, FL 33602 <br> Telephone: (813) 223-7333 <br> Facsimile: (813) 223-2837 <br> Email: steven.wirth@akerman.com <br> peter.larsen@akerman.com <br> raye.elliott@akerman.com <br> stefi.george@akerman.com <br><br> *Counsel to the Plan Administrator* | |
| In re: <br><br> 20230930-DK-BUTTERFLY-1, INC. f/k/a Bed Bath & Beyond, Inc., *et.al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 23-13359 (VFP) <br><br> (Jointly Administered) |
| MICHAEL GOLDBERG, as Plan Administrator for 20230930-DK-BUTTERFLY-1, INC. f/k/a Bed Bath & Beyond, Inc., <br><br> Plaintiff, <br><br> v. <br><br> INTERNAL REVENUE SERVICE, an agency of the United States of America, <br><br> Defendant. | Adversary Proceeding No. 24-01533 (VFP) |

**DECLARATION OF LAURA CROSSEN IN SUPPORT
OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, Laura Crossen, under penalty of perjury, declare as

follows:

85263024;2

1. I am a consultant hired by Michael Goldberg as the Plan Administrator to 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.)[1] and 73 affiliated debtors (the "Debtors"). I give this declaration in support of the *Plaintiff's Motion for Summary Judgment* (the "Motion").

2. Prior to the filing of this bankruptcy case, I was the Interim Chief Financial Officer and, previously, the Chief Accounting Officer for Bed Bath & Beyond, Inc. ("BBB") and its subsidiaries who are the Debtors in this bankruptcy case. I worked for BBB for 22 years.

3. Except as otherwise indicated, the statements in this Declaration are based on: (a) my personal knowledge of the Debtors' business operations as Interim Chief Financial Officer and previously Chief Accounting Officer of BBB and its subsidiaries; (b) my review of relevant documents and the Motion; (c) information provided to me by, or discussions with, other consultants who work for the Plan Administrator, the Plan Administrator's Professionals (including the Claims Agent); and/or (d) my general experience and knowledge. I am authorized to submit this Declaration. If called upon to testify, I can and will testify competently as to the facts set forth herein.

4. Prior to the commencement of these bankruptcy cases, BBB was a leading retailer that operated retail stores and e-commerce websites throughout the United States.

A.  **BBB's Charitable Donation Program**

5. BBB regularly donated unsold merchandise to charitable organizations benefiting the poor, needy and ill. BBB had written operating procedures for its merchandise charitable contribution program which were utilized by all retail stores. A copy of these written procedures

---

[1] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

2

85263024;2

dated July 3, 2012 are attached hereto as **Exhibit A**. It is my belief that the procedures remained substantially the same during the years ending March 2018 and March 2019.

6. In 2001, BBB formed a partnership with Good360 (formerly known as Gifts In Kind International), a non-profit organization based in Alexandria, Virginia, to formalize a charitable donation program that enabled BBB to provide product donations to those most in need. Through this program, BBB donated items from participating stores to local 501(c)(3) charities across the United States, Canada and Puerto Rico. These donations provided relief and assistance to individuals for situations such as relief for victims of natural disasters, transitional housing needs for families in crisis, needs for youth in low income situations and support for mentally and physically disabled individuals.

7. BBB entered into an agreement with Good360 to manage its charitable donation program, a sample copy of which is attached hereto as **Exhibit B**. Good360 would coordinate with local charities and BBB's retail stores for the pickup and delivery of donated goods. A sample retail donation authorization form dated April 8, 2010 reflecting a sample donation of merchandise to the National Veterans Foundation in Los Angeles, California is attached hereto as **Exhibit C**. It is my belief that the form remained substantially the same during the years ended March 2018 and March 2019.

8. According to BBB's 2018 and 2019 Corporate Responsibility Reports, which were provided to its shareholders and published on its website, BBB estimated its product donations to have a fair market value of $170 million and $40 million, respectively. BBB was recognized by Good360 for its outstanding corporate citizenship and effective product philanthropy.

9. The items BBB donated consisted of two groups of merchandise: (i) items that had been processed through the return-to-vendor ("RTV") program or as a freight claim; and (ii) "as

is" merchandise placed in the sellable category that did not sell in a 14-day period. In both groups, prior to donating, the merchandise was properly removed from inventory and reclassified in another account, ensuring it was not recorded as opening inventory.

10. As a result, all items processed through the RTV or freight claim process were marked out of stock as soon as they were deemed non-saleable merchandise, and therefore such items were not included in opening inventory even if they were still physically present in BBB stores or storage at year-end.

### B. BBB's Original Tax Returns

11. BBB timely filed Form 1120, *U.S. Corporation Income Tax Return* (the "2018 Tax Return") for its taxable period ending March 3, 2018 (the "2018 Tax Year").

12. BBB timely filed Form 1120, *U.S. Corporation Income Tax Return* (the "2019 Tax Return") for its taxable period ending March 2, 2019 (the "2019 Tax Year"). The 2018 Tax Return and 2019 Tax Return are collectively referred to as the "Original Tax Returns" and the 2018 Tax Year and 2019 Tax Year are collectively referred to as the "Tax Years".

13. On the Original Tax Returns, BBB claimed enhanced charitable contributions deductions for charitable contributions of inventory made during the Tax Years pursuant to § 170(e)(3) of the IRC. Due to the charitable contribution limitation of 10% of taxable income, BBB was not able to fully deduct the charitable contributions it made on the Original Tax Returns.

14. Prior to the Tax Years, the IRS conducted an examination of BBB's taxable year ending February 28, 2016 (the "Prior Examination"), as a result of which the IRS and BBB entered into a Memorandum of Understanding explained on Form 886-A pursuant to which the IRS allowed the charitable contribution deductions subject to certain adjustments to the enhanced valuation of BBB's charitable contributions for such taxable year.

15. As a result of the Prior Examination, the IRS reviewed BBB's current charitable contribution deduction for the 2018 Tax Year and made corresponding adjustments to the return to apply a similar valuation methodology to that agreed upon in the Prior Examination.

16. The IRS adjusted the non-cash current charitable deduction by $10,130,982 for the 2018 Tax Year. The IRS made no further adjustments to BBB's current charitable contributions for these periods.

### C. BBB's Amended Returns/Refund Claims Filed With IRS

17. On December 15, 2022, BBB timely filed Form 1120X, *Amended U.S. Corporation Income Tax Return*, for the 2018 Tax Year, representing BBB's refund claim for that period (the "2018 Refund Claim"). A copy of the 2018 Refund Claim is attached hereto as **Exhibit D**.

18. On Form 1125-A (Cost of Goods Sold) attached to its 2018 Refund Claim, BBB increased its cost of goods sold in the amount of $85,157,520 to reflect the cost basis of donated inventory. The beginning inventory of $2,800,263,882 and purchases of $9,077,421,012 did not change.

19. The 2018 Refund Claim made a corresponding reduction of the charitable contribution deduction in the amount of $8,275,882.

20. The 2018 Tax Return and the 2018 Refund Claim confirm that the opening inventory was $2,800,263,882 and the inventory at the end of the year was $2,700,252,851. Thus, BBB disposed (either by sale or donation) of substantially all of its inventory purchases during the 2018 Tax Year.

21. The 2018 Refund Claim sought a refund of overpaid income tax in the amount of $13,637,620, plus accrued interest (the "2018 Refund").

22. The attachment to the 2018 Refund Claim stated, in relevant part:

<u>Form 1120X, Page 1, Line 1 – Total Income:</u>

The reduction in total income of $85,157,520 represents the cost of product donations that is currently deductible by Bed Bath & Beyond Inc. and Subsidiaries ("taxpayer") pursuant to the provisions of IRS Notice 2008-90.

* * *

The taxpayer is relying on Notice 2008-90 guidance that permits a taxpayer who makes donations during a taxable year, that qualify for the enhanced deduction under IRC Sec 170(e)(3), to elect whether to apply to some or all of such donations made during a taxable year, the special rules pursuant to IRC Sec. 170(e)(3) and the regulations thereunder (Treas. Reg. § 1.170A-4A) or, alternatively, apply the "general section 170 rules" in Treas. Reg. § 1.170A-1(c)(4) so that costs incurred in the year of contribution with respect to donated property, remain embedded in COGS (thereby increasing the COGS deduction and reducing income) and would be deductible under IRC §162.

23. On May 25, 2023, BBB timely filed Form 1120X, *Amended U.S. Corporation Income Tax Return*, for the 2019 Tax Year, representing BBB's refund claim for that period (the "<u>2019 Refund Claim</u>" and, together with the 2018 Refund Claim the "<u>Refund Claims</u>"). A copy of the 2019 Refund Claim is attached hereto as **Exhibit E**.

24. On Form 1125-A (Cost of Goods Sold) attached to its 2019 Refund Claim, BBB increased its cost of goods sold in the amount of $19,960,271 to reflect the cost basis of donated inventory. The beginning inventory of $2,700,252,851 and purchases of $8,719,431,862 did not change.

25. The 2019 Refund Claim made a corresponding reduction of the charitable contribution deduction in the amount of $30,051,947.

26. The 2019 Tax Return and the 2019 Refund Claim confirm that the opening inventory was $2,700,252,851 and the inventory at the end of the year was $2,512,666,849. Thus, BBB disposed (either by sale or donation) of substantially all of its inventory purchases during the 2019 Tax Year.

27.     The 2019 Refund Claim sought refund of overpaid income tax in the amount of $9,352,953, plus accrued interest (the "2019 Refund" and, together with the 2018 Tax Refund, the "Refunds").

28.     The attachment to the 2018 Refund Claim stated, in relevant part:

Form 1120X, Page 1, Line 1 – Total Income:

The reduction in total income of $19,960,271 represents the cost of product donations that is currently deductible by Bed Bath & Beyond Inc. and Subsidiaries ("taxpayer") pursuant to the provisions of IRS Notice 2008-90…

The taxpayer is relying on Notice 2008-90 guidance that permits a taxpayer who makes donations during a taxable year, that qualify for the enhanced deduction under IRC Sec 170(e)(3), to elect whether to apply to some or all of such donations made during a taxable year, the special rules pursuant to IRC Sec. 170(e)(3) and the regulations thereunder (Treas. Reg. § 1.170A-4A) or, alternatively, apply the "general section 170 rules" in Treas. Reg. § 1.170A-1(c)(4) so that costs incurred in the year of contribution with respect to donated property, remain embedded in COGS (thereby increasing the COGS deduction and reducing income) and would be deductible under IRC §162.

29.     During its audit of the Refund Claims, the Debtor produced to the IRS the workpapers and financial records supporting the original and amended returns, which demonstrate unequivocally that any donated items were removed from cost of goods sold in the Original Tax Returns.

30.     The Refund Claims were filed to remove the enhanced benefit for the charitable contributions for donated inventory and instead claim the cost basis deduction.

31.     The Refund Claims otherwise conformed to the valuation agreed upon between BBB and the IRS in the Prior Examination.

32.     On March 26, 2024, the IRS issued two notices of disallowance (the "Notices of Disallowance"), disallowing the Refund Claims in full. Copies of the Notices of Disallowance are attached hereto as **Exhibit F**.

85263024;2

33. According to the Notices of Disallowance, the IRS disallowed both Refund Claims because the "IRS believes that [Taxpayer] irrevocably elected the enhanced method for computing the charitable contribution deduction under IRC § 170(e)(3). Elective choices are binding after the period for filing expires and can only be changed thereafter with the consent of the Commissioner (*Pacific Nat'l Co. v. Welch*, 304 U.S. 191 (1938))." Additionally, according to the Notices of Disallowance, the IRS disallowed both Refund Claims because BBB did not provide sufficient facts to show that the merchandise donated to charity was acquired and donated in the same year.

34. As stated above, the IRS already reviewed the original 2018 Tax Return and 2019 Tax Return and only made minor adjustments to the enhanced valuation amount originally claimed charitable deductions. The IRS did not dispute that the goods donated by BBB qualified as charitable contributions under the Code.

35. The statute of limitations for the assessment of additional taxes for the 2018 and 2019 tax years has expired.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 3, 2026

Signed by:

*Laura Crossen*

0EE8916C36A34F7...

LAURA CROSSEN

85263024;2