ROBERT J. ATRAS
Trial Attorney, Civil Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
Telephone: (202) 598-3738
Fax: (202) 514-6866
Robert.J.Atras@usdoj.gov

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re | : | |
| | : | |
| 20230930-DK-BUTTERFLY-1, INC. f/k/a/ | : | Chapter 11 |
| Bed Bath & Beyond, Inc., et. al., | : | Case No. 23-13359 (VFP) |
| | : | |
| Debtors. | : | |
| | : | |
| MICHAEL GOLDBERG as | : | |
| Plan Administrator for 20230930-DK- | : | |
| BUTTERFLY-1, INC. f/k/a | : | |
| Bed Bath & Beyond Inc., | : | Adv. Pro. No. 2:24-ap-1533 |
| | : | |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| INTERNAL REVENUE SERVICE, | : | |
| Agency of the United States of America | : | |
| | : | |
| Defendant. | : | |
| | : | |

**BRIEF IN SUPPORT OF
UNITED STATES' CROSS-MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant the United States of America, as proper party in place of its agency the

Internal Revenue Service, opposes the motion for summary judgment (ECF No. 46) filed by

Plaintiff Michael Goldberg, Plan Administrator ("*Plaintiff*") for 20230930-DK-Butterfly, Inc.

f/k/a Bed Bath & Beyond, Inc. and affiliates ("*Debtor*"), and hereby files this cross-motion for

summary judgment.

1

**PRELIMINARY STATEMENT**

Plaintiff filed this adversary proceeding seeking a total refund of nearly $23 million for Debtor's 2018 and 2019 tax years.[1] Debtor originally filed income tax returns for both years claiming a charitable contribution deduction based on donated inventory and elected to compute the deduction using the calculation set forth in 26 U.S.C. § 170(e)(3). This method of computing the deduction (the "***Enhanced Method***") allows the taxpayer to deduct its tax basis in inventory donations, plus half the gain that would have been recognized in income if the inventory had been sold at its fair market value on the date of contribution, limited to twice its tax basis. Later, Debtor amended its returns for both years to change the method for computing the deduction to use the calculation set forth in 26 U.S.C. § 170(e)(1). Under this method (the "***Basic Method***"), the taxpayer can include the costs of donated inventory as part of its cost of goods sold and deduct that cost under section 162 as an ordinary business expense. It is this change in the method of computing the charitable deduction that led to the refund claimed by Debtor. The IRS denied Debtor's refund claims because, as a matter of law, Debtor made an irrevocable election as to the method of calculating the deduction on its originally filed returns. But even if Debtor was not bound by its prior election, Debtor has not substantiated its refund claims because it has not submitted evidence that it meets the criteria required to claim the deduction under 26 U.S.C. § 170.

When a taxpayer faces two or more options for computing an item related to its tax liability, the doctrine of election ("***Election Doctrine***") provides that the taxpayer is bound by the elections it chose when filing a tax return and cannot unilaterally change them at a later time.

---

[1] Debtor refers to the tax period ending March 3, 2018 as its 2018 tax year and the tax period ending March 2, 2019 as its 2019 tax year.

Here, Debtor's refund claims were triggered by its decision to change its method of calculating its charitable deduction, from the Enhanced Method it originally elected when filing its federal income tax returns, to the Basic Method on its amended returns. In October 2024, the United States filed a motion to dismiss this adversary proceeding because, *inter alia*, as a matter of law, the Election Doctrine prevents Debtor from changing its election as to the method of computing the deduction at issue. The Court held a hearing on the Government's motion in November 2024, concluding that "the election doctrine is valid and good law" but put to the side "whether it applies in this case in particular." In its motion for summary judgment, Plaintiff has failed to show that the doctrine does not apply here. Because this unilateral change is barred by the Election Doctrine, the United States is entitled to judgment as a matter of law.

Further, to compute a charitable contribution deduction under the Basic Method, the plain text of the Treasury Regulations requires a taxpayer to establish several facts, including the fair market value of the property donated, the amount which would have been recognized as gain, other than long-term capital gain, had the property been sold by the donor at the time of its donation, the cost basis of the property donated, and how the company's cost of goods sold was adjusted to account for the donation and prevent a double tax benefit of a deduction under section 162 for a business expense and a deduction under section 170 as a charitable contribution Because Plaintiff has not carried his burden of establishing these facts, the Court should enter summary judgment for the United States.

If the Court is not inclined to rule that the refund at issue is barred by the Election Doctrine, or that it fails for lack of substantiation, the United States requests that the Court grant it relief under Fed. R. Civ. P. 56(d) and defer ruling on Plaintiff's motion for summary judgment

until the United States is able to receive responses to its outstanding discovery requests and obtain the facts essential to a proper defense of this matter.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

This motion is accompanied by the United States' *Statement of Material Facts Not in Dispute*. (ECF No. 50-2.) The United States incorporates by reference the facts enumerated in that Statement as if fully set forth herein.

## RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

This motion is further accompanied by the United States' *Response to Plaintiff's Statement of Material Facts Not in Dispute*. (ECF No. 50-3.) The United States incorporates by reference the responses enumerated in that Statement as if fully set forth herein.

The United States contends the Court can grant summary judgment in its favor based on the facts it has asserted herein; however, to the extent the Court is inclined to rule otherwise, Plaintiff's responses to the United States' written discovery requests are essential for the United States to oppose all the facts asserted by Plaintiff in his motion. (*Id*.) As such, the Court should deny or defer consideration of Plaintiff's motion under Federal Rule of Civil Procedure 56(d). *See* Section III, *infra*.

## STANDARD OF REVIEW

In tax refund suits, "the court undertakes a *de novo* review of the tax decision, because 'a tax refund suit is not an appellate review of the administrative decision that was made by the IRS.'" *Mann v. United States*, 364 F. Supp. 3d 553, 560 (D. Md. 2019), *aff'd,* 984 F.3d 317 (4th Cir. 2021) (citations and quotations omitted). Ultimately, in a refund suit, the taxpayer bears the burden of proof to establish "the exact dollar amount of the alleged overpayment to which it claims a refund." *Sara Lee Corp. v. United States,* 29 Fed.Cl. 330, 334 (1993) (citing *United*

*States v. Janis,* 428 U.S. 433, 440 (1976); *Mo. Pac. R.R. v. United States,* 168 Ct. Cl. 86, 338 F.2d 668, 671 (1964)).

The Supreme Court "has noted the 'familiar rule' that "an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992). Thus, "deductions are strictly construed and allowed only 'as there is a clear provision therefor.'" *Id.* (citations omitted).

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Thus, the Court should grant summary judgment for Plaintiff only if Plaintiff has shown undisputed facts "clearly showing the right to the claimed deduction" and establishing "the exact dollar amount of the alleged overpayment to which it claims a refund." *INDOPCO*, 503 U.S. at 84; *Sara Lee Corp.*, 29 Fed.Cl. at 334.

**ARGUMENT**

As set forth more fully below, the United States is entitled to summary judgment in its favor for two independent reasons: through either application of the Election Doctrine or Plaintiff's failure to carry its burden to substantiate its claim with evidence in admissible form. If the Court finds either argument correct, summary judgment should be entered in favor of the United States and against Plaintiff. If the Court finds both arguments lacking, the United States requests that the Court deny or defer ruling on Plaintiff's motion for summary judgment until the United States has the opportunity to gather facts essential for determining whether Debtor has substantiated its refund claims as required by 26 U.S.C. § 170.

**I.    Debtor's refund claim is barred by the Election Doctrine.**

Under the Election Doctrine, a taxpayer is bound by the elections it chooses after the period for filing the return expires and cannot later change those elections without the consent of the Commissioner. *See, e.g.*, *Pac. Nat'l Co. v. Welch*, 304 U.S. 191, 194-95 (1938). At the beginning of this suit, Plaintiff argued that the Election Doctrine is arcane and no longer valid. (ECF No. 16 at 5.) But this Court found that "the election doctrine is valid and good law[.]" (ECF No. 38, Hrg. Tr., 25:17-21.) Now Plaintiff pivots to arguing that the doctrine simply does not apply here. But Plaintiff's argument is unsupported by case law or common sense. Debtor is bound by its election to use the Enhanced Method of calculating its charitable deductions, which it freely chose when filing its federal income tax returns for each of the years at issue, so the Court should grant summary judgment in favor of the United States.

**A.  The Election Doctrine applies here.**

Under the Election Doctrine, a taxpayer is bound by the elections it makes on its tax return once the period for filing the return expires and cannot later change those elections without the consent of the Commissioner. *See, e.g., Pac. Nat'l Co.*, 304 at 194-95. For purposes of the doctrine, a taxpayer makes an "election" when it: (1) makes a free choice between two or more alternatives; and (2) communicates that choice to the Commissioner through an overt act. *Grynberg v. Comm'r*, 83 T.C. 255, 261 (1984). "The doctrine of election is often applied in situations where a taxpayer has filed or seeks to file an amended return or is pursuing a suit for refund and seeks to change the treatment of the contested items inconsistently with the treatment of the items on the original return." *Est. of Fry v. Comm'r*, T.C. Memo 2024-8, 2024 WL 245014, at *29 (T.C. 2024). (citations omitted).

To escape its effect, Plaintiff claims that the Election Doctrine only applies "where the statutory intent was to create irrevocable elections, as opposed to different methods of computing a deduction[.]" (ECF No. 46-1 at 19.) But Plaintiff's argument ignores the seminal case on the Election Doctrine: in *Pacific National*, the Supreme Court held that when a taxpayer chooses between two methods of computing something on their tax return, even when the statute makes no reference to an election, the Election Doctrine applies. *Pac. Nat'l Co.*, 304 U.S. at 194-95. Since then, the doctrine has often been applied to methods of computing a deduction—including charitable contribution deductions under section 170. *Woodbury v. Comm'r*, 900 F.3d 1457, 1461 (10th Cir. 1990) (taxpayer made valid election by calculating charitable contribution deduction under particular method and was thus bound by the election.); *Grynberg v. Comm'r*, 83 T.C. 255, 262 (1984) (same). "The rule of *Pacific National* is often regarded as the fundamental authority for the development of this law and it has enjoyed widespread application." *Woodbury*, 900 F.3d at 1461 (internal quotations and citations omitted).

Nevertheless, Plaintiff asserts that courts have limited application of the Election Doctrine to "Code sections where the election language is absolute." (ECF No. 46-1 at 20.) But Plaintiff cites no case holding as much. Instead, Plaintiff cites Code sections that unambiguously state that an election under that section is irrevocable. (*Id*.) But no court has limited applicability of the Election Doctrine to such Code sections, and to do so would make no sense. Where a Code section explicitly provides that an election made under it is irrevocable, the Supreme Court's Election Doctrine is unnecessary. But where the Code creates an election (*i.e.*, the ability of a taxpayer to choose between two or more options) without elaborating on the mechanics of the election—like here—the Election Doctrine serves its purpose.

The method of computing the charitable contribution deduction at issue in this case is the exact type of elective choice that merits application of the doctrine, because to "[c]hange from one method to the other … would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws." *Pac. Nat'l Co.*, 304 U.S. at 194 (also finding that such a change "would operate to enlarge the statutory period for filing returns to include the period for recovering overpayments.") Indeed, Plaintiff recognizes that the Election Doctrine is best applied to elections with a "cascading impact beyond the tax year in issue." (ECF No. 46-1 at 27.) And in the explanation of its decision to change its election on its amended returns, Debtor explained its motivation was "to utilize the [ ] charitable contribution carryovers[2] prior to their expirations." (ECF Nos. 35-1 at 5; 35-2 at 4.) As such, allowing taxpayers to unilaterally change their elections in these circumstances would certainly impose "burdensome uncertainties" upon the IRS's ability to administer the tax laws—including examination of any potential effect on other tax years.[3] Debtor's unilateral change of method will require recalculation of Debtor's entire tax liability for both tax periods at issue. *See Lewis v. Reynold*, 284 U.S. 281, 283 (1932) ("the ultimate question" in a refund suit "is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability.")

---

[2] Except for certain types of donations not at issue here, a corporation's total deduction, such as those claimed under the Basic Method or Enhanced Method, is limited to the amount equaling 10% of its taxable income for such tax year. Any excess of the 10% threshold is eligible to be carried forward to the next tax year (after first accounting for the deduction for donations made within such taxable year) for up to five successive tax years. *See* 26 U.S.C. §§ 170(b)(2)(A), 170(d)(2)(A)-(B).

[3] Notably, simultaneous to this suit, Plaintiff is litigating a *second* multi-million-dollar refund suit on behalf of Debtor involving more than $5 million dollars for the same tax years at issue here. *See Goldberg v. Internal Revenue Service*, Adv. Proc. No 26-01030-VFP.

Plaintiff claims that courts have held that the Election Doctrine does not apply where a statute does not contain the word "election." Again, this is simply untrue. 15 J. Mertens, *L. Fed. Income Tax'n*, § 60:30 (2025) ("even where [a statute or regulation] do not expressly provide that an election once made is binding, the courts have uniformly applied that rule."). Courts have often applied the doctrine even in the absence of express reference to an election. *See, e.g.*, *Goldstone v. Comm'r*, 65 T.C. 113 (1975); *Bayley v. Comm'r*, 35 T.C. 288 (1960); *Est. of Curtis v. Comm'r*, 36 B.T.A. 899 (1937). Plaintiff, meanwhile, cites no case holding that the Election Doctrine is limited in this way.

To support his claim that "where a statute contains no reference to an election, the doctrine has been held not to apply[,]" Plaintiff misleadingly cites a case called *AG Processing*. (ECF No. 46-1 at 20-21.) But that case made no such holding. In *AG Processing*, the court declined to apply the Election Doctrine because the taxpayers were not presented with two or more choices—the law permitted them only one option. *AG Processing v. Comm'r*, 153 T.C. 34, 55 (2019) (declining to apply doctrine because "Petitioner did not have a free choice between two or more alternatives.") Plaintiff also cites the case of *Bea v. Commissioner*. (ECF No. 46-1 at 19.) But *Bea* held only that the Election Doctrine applied to a provision of the code with a distinct election language. 761 Fed. Appx. 863 (11th Cir. 2019). The court never stated, not even in *dicta*, that the Election Doctrine was limited to such Code provisions. And Plaintiff cites no case holding as much, because no such case exists. Indeed, courts have found the doctrine to apply to Code sections that do not include express election language, contrary to Plaintiff's assertions. *See, e.g.*, *Goldstone v. Comm'r*, 65 T.C. 113 (1975).

9

Finally, Plaintiff attempts to rely on IRS Notice 2008-90[4] as a way around the Election Doctrine. But Plaintiff's reliance on the Notice is misplaced. Plaintiff argues that the language of the Notice, stating that "the Service will not challenge a taxpayer's computation of the deduction amount and the required adjustment to cost of goods sold" means that Debtor can change its mind as it pleases because the Notice does not use the word "initial" before the word "computation." (ECF No. 46-1 at 17-18.) But the Notice does not address the scenario of a taxpayer changing its initially chosen method on a subsequently filed amended return. If anything, the Notice confirms that using the Basic Method is an election by the taxpayer: in essence, it states that even though a taxpayer's contribution qualifies for the deduction under 170(e)(3), the IRS will not challenge the decision of a taxpayer who *elects* to use 170(e)(1)(A) instead. Indeed, subsequent IRS guidance clarified that:

> Notice 2008-90 applies to very few situations and does not limit an examiner's ability to raise most issues in connection with charitable contribution of inventory. The Notice allows a taxpayer who otherwise qualifies for a charitable contribution "enhanced" deduction under section 170(e)(3) to use the "limited-to-basis" deduction under section 170(e)(1)(A) instead. It does not prevent an examiner from challenging any other issues regarding the contribution under section 170 or other applicable provisions (including, for example, the amount of the taxpayer's basis, fair market value, adjustments to cost of goods sold, or substantiation).

Chief Counsel Advice No. 201012061 (Mar. 26, 2010).[5] This guidance, issued years before Debtor filed its amended returns, belies Plaintiff's argument as to the meaning of the Notice. Further, on an explanatory statement to its amended returns, Debtor stated that it was relying on Notice 2008-90, which permits taxpayers "to elect whether" to use the Basic Method or the

---

[4] https://www.irs.gov/pub/irs-drop/n-08-90.pdf (last accessed Apr. 7, 2026).
[5] https://www.irs.gov/pub/irs-wd/1012061.pdf (last accessed Apr. 7, 2026).

10

Enhanced Method to compute the charitable contribution deduction. (ECF Nos. 35-1 at 5; 35-2 at 4.) Thus, Debtor acknowledged it made an election here.

**B. Debtor made a free choice between two or more alternatives when it elected to compute the deduction under the Enhanced Method on its original returns**.

Plaintiff distorts the Government's position by mischaracterizing it as "attempting to stretch the holding of *Grynberg* to mean that any position taken on the return is an election[.]" (ECF No. 46-1 at 26.) But the Government has never made this argument. Rather, the Government's position is true to the holding of *Grynberg*: an election is made when a taxpayer chooses between two or more options. *Grynberg*, 83 T.C. at, 261.

That is exactly what happened here. It is undisputed that there are two options regarding how to compute a charitable contribution deduction for the property Debtor donated—the Enhanced Method or the Basic Method. (ECF No. 46-1 at 15.) Presented with these two options, Debtor made a choice to use the Enhanced Method on its tax returns as originally filed. This constitutes an election, triggering application of the Election Doctrine. *See, e.g.*, *Grynberg*, 83 T.C. at, 261. Indeed, as mentioned *supra*, Debtor acknowledged in its amended returns that the statute involves an "election." (ECF Nos. 35-1 at 5; 35-2 at 4.)

Plaintiff claims that Debtor did not make a "conscious decision to make any election here." (ECF No. 46-1.) Plaintiff's only support for this position is the statement that "[t]he only mention of any choice at all is in Notice 2008-90[.]" (ECF No. 46-1 at 23.) Indeed, IRS Notice 2008-90, issued more than a decade before Debtor files its original returns, made clear that taxpayers have an elective choice between multiple methods of computing the charitable contribution deduction at issue here. Where the statute plainly provides that choice of methods, and the taxpayer necessarily chooses one method over the other (here, Debtor's choice to use the Enhanced Method over the Basic Method), it is simply factually impossible to say that the

11

taxpayer did not "decide" to use one of the available methods. That decision, or choice, to opt to use the Enhanced Method for computing the charitable contribution deduction on Debtor's original return, triggers application of the Election Doctrine. *See, e.g.*, *Grynberg*, 83 T.C. at, 261.

Plaintiff's claim that Debtor, a fortune 500 company at the time it filed the original returns, was unaware of its ability to choose between the two computation methods provided in the same subsection of section 170 is unsupported by any evidence and simply makes no sense in light of the statutory text. Making a choice between two alternatives is all that is required for an election to be binding under the doctrine. *See, e.g.*, *Grynberg*, 83 T.C. at, 261. Debtor thus "made a free choice between two or more alternatives" when it chose to use the Enhanced Method compute its deduction on its original returns.

### C. Debtor communicated its election to the IRS through an overt act.

Although not entirely clear, Plaintiff also appears to argue that Debtor did not make the required "overt act" when it used the Enhanced Method on its original returns. But the case law is clear: filing a return using a certain method for computing a charitable contribution deduction on a return constitutes an overt act communicating that choice to the IRS. *See, e.g.*, *Grynberg v. Comm'r*, 83 T.C. 255, 262 (1984); *Woodbury v. Comm'r*, 900 F.3d 1457, 1461 (10th Cir. 1990) (taxpayer made valid election by calculating charitable contribution deduction under particular method and was thus bound by the election.) The case relied on most heavily by Plaintiff, *Estate of Fry*, also contemplates that filing an amended return treating an item on a return differently than it was treated on the original return constitutes making an election for purposes of the doctrine. 2024 WL 245014, at *29 (T.C. 2024) ("The doctrine of election is often applied in situations where a taxpayer has filed or seeks to file an amended return or is pursuing a suit for refund and seeks to change the treatment of the contested items inconsistently with the treatment

of the items on the original return."). Thus, Debtor communicated its election to use the Enhanced Method to the IRS when it filed its original returns.

### D.  No exception to the Election Doctrine applies here.

Plaintiff cites *Mead Coal*, where a court found "amendment made to correct a mistake" as an exception to the Election Doctrine. Plaintiff seems to be asserting that Debtor's election to use the Enhanced Method on its original returns was an error, arguing that "as here, there is no affirmative election but rather *fixing* the method by which a donation amount was computed." (ECF No. 46-1 at 26) (emphasis added). While true that a material mistake of fact underlying the original election can be an exception to the doctrine, there is no evidence to show Debtor made a mistake in its original election. First, Debtor admits that the purpose of its attempt to change its election was due to a change in financial circumstances, explaining: "[Debtor] has determined that given their current economic situation, it is unlikely that [Debtor] will be able to utilize the FY [ ] charitable contribution carryovers prior to their expiration[.]" (ECF Nos. 35-1 at 5; 35-2 at 4.) Second, Debtor admits that the only change between the original returns and the amended returns was the change of the computation method—there were no corrections. (ECF No. 46-1 at 16) ("The only change BBB made on the Refund Claims from prior years' practice was to remove the enhanced portion of the deduction and to only compute its deduction using the regular deduction[.]") (Plaintiff's emphasis). Thus, no mistake was made when Debtor elected to use the Enhanced Method on its original return, and the changing financial circumstance of Debtor led it to choose the Basic Method on its amended return. The amended return did not "fix" any error; it reflected Debtor's conscious choice to change its method for calculating its charitable deduction to one more suited to its changed financial circumstances.

Further, an unforeseen change in circumstances is not sufficient to undo an election. *Grynberg*, 83 T.C. at 262 ("unexpected subsequent events" are "insufficient to mitigate the binding effect of elections made"); *United States v. Helmsley*, 941 F.2d 71, 86 (2d Cir. 1991) ("Under the doctrine of election, a taxpayer who makes a conscious election may not, without the consent of the Commissioner, revoke or amend it merely because events do not unfold as planned."); *Woodbury*, 900 F.3d 1457 (taxpayer who made valid election of particular computation method could not file amended return under different method after discovering it would have been financially advantageous.)

Thus, the Election Doctrine applies to Debtor's election to use the Enhanced Method on its original returns and Debtor is bound by that election.

**II.    Even if Debtor's claim is not barred by the Election Doctrine, Debtor's claim must be denied because it has failed to carry its burden to prove entitlement to the deduction it seeks.**

The Supreme Court "has noted the 'familiar rule' that "an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992). Thus, "deductions are strictly construed and allowed only 'as there is a clear provision therefor.'" *Id*. (citations omitted). When the Code section governing a deduction delegates authority to the Treasury Secretary to issue regulations for substantiation of the deduction, those regulations create "the hoops that a taxpayer must crawl through to claim a deduction." *Est. of Evenchik v. Comm'r*, 105 T.C.M. 1231, 2013 WL 424791, at *2 (T.C. 2013). "And the hoops become longer and tighter as the value of donated property rises." *Id*. Indeed, courts require strict compliance with the substantiation rules. *See, e.g.*, *15 W. 17th St. LLC v. Comm'r*, 147 T.C. 557 (2016) (affirming disallowance of $64 million charitable contribution deduction for lack of strict

14

compliance with substantiation requirement, despite no disagreement about fair market value of the contribution or that a contribution was made.)

26 U.S.C. § 170 provides for a charitable contribution deduction, which "shall be allowable as a deduction only if verified under regulations prescribed by the Secretary." 26 U.S.C. § 170(a)(1).[6] The Secretary prescribed such regulations, as relevant here, in Treasury Regulations (26 C.F.R.) §§ 1.170A-1, 1.170A-4, and 1.170A-4A. Treas. Reg. § 1.170A-1(c)(1) provides, "If a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution reduced as provided in section 170(e)(1) and paragraph (a) of § 1.170A-4, or section 170(e)(3) and paragraph (c) of § 1.170A-4A." The reduction provided in section 170(e)(1) applies to the Basic Method and the reduction provided in section 170(e)(3) applies to the Enhanced Method. In addition, 26 C.F.R. § 1.170A-1(c)(4) provides:

---

[6] While the Supreme Court recently overruled *Chevron*, and held that "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority," the Court also noted that "Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." Here, in section 170, Congress delegated specific authority to the IRS to promulgate regulations proscribing how to verify entitlement to the deduction claimed. Thus, the delegation must be respected under the holding of *Loper Bright*. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024)

Any costs and expenses pertaining to the contributed property which were incurred in taxable years preceding the year of contribution and are properly reflected in the opening inventory for the year of contribution must be removed from inventory and are not a part of the cost of goods sold for purposes of determining gross income for the year of contribution. Any costs and expenses pertaining to the contributed property which are incurred in the year of contribution and would, under the method of accounting used, be properly reflected in the cost of goods sold for such year are to be treated as part of the costs of goods sold for such year. If costs and expenses incurred in producing or acquiring the contributed property are, under the method of accounting used, properly deducted under section 162 or other section of the Code, such costs and expenses will be allowed as deductions for the taxable year in which they are paid or incurred whether or not such year is the year of the contribution. Any such costs and expenses which are treated as part of the cost of goods sold for the year of contribution, and any such costs and expenses which are properly deducted under section 162 or other section of the Code, are not to be treated under any section of the Code as resulting in any basis for the contributed property.

*See also*, Bloomberg Tax, Portfolio 794-2nd, *Charitable Contributions by Corporations and Other Business Entities* § V.B. ("costs and expenses relating to property that is contributed during the taxable year *that are incurred in the year of contribution* are treated as part of the cost of goods sold for such a year[.]") (emphasis in original).

Treas. Reg. § 1.170A-4(a), applicable to taxpayers electing the Basic Method, provides that the amount of the charitable contribution of ordinary income property (*e.g.*, inventory) a corporation would take into account under section 170(a) must be reduced by the amount which would have been recognized as gain, other than long-term capital gain, had the property been sold by the donor at its fair market value at the time of its contribution to the charitable organization. By contrast, Treas. Reg. § 1.170A-4A(c), applicable to taxpayers electing the Enhanced Method, provides that the amount of deduction that can be claimed for a qualified charitable contribution of inventory will equal the fair market value of the contributed property reduced by *one-half* of the amount which would have been recognized as gain, other than long-term capital gain, had the property had been sold by the donor at its fair market value at the time

16

of its contribution, but "[i]f the amount of the charitable contribution which remains after this reduction exceeds twice the basis of the contributed property, then the amount of the charitable contribution is reduced a second time to an amount which is equal to twice the amount of the basis of the property." These are the "hoops" that Debtor "must crawl through" to claim the deduction. *See Est. of Evenchik*, 2013 WL 424791, at *2, and they differ depending on which method is chosen to calculate the deduction.

Plaintiff seems to recognize the requirement of 26 C.F.R. § 1.170A-1(c)(4), stating "if inventory purchased in a prior year is donated in the current year, the items must be removed from inventory and not be treated as part of cost of goods sold in the current year (to avoid a double benefit), while inventory purchased in the current year can remain in cost of goods sold for the current year." (ECF No. 46-1 at 29.) But Plaintiff makes no showing that Debtor removed inventory purchased in a prior year from cost of goods sold reported on its amended returns for each year. Plaintiff simply states that Debtor removed the donated items from the cost of goods sold on its original returns (*Id*., at 30) and added the cost basis of that inventory to cost of goods sold on its amended returns (*Id*., at 9-10, ¶¶18, 24.) Plaintiff makes no showing that Debtor *only* added the cost basis of inventory purchased in each year to cost of goods sold for that year. Debtor has the burden to make this showing and the United States must strictly construe the requirements for the deduction. *See INDOPCO*, 503 U.S. at 84.

Moreover, the acquisition date of donated inventory is not all that Debtor is required to substantiate to be entitled to the deduction. Computation under the Basic Method also involves establishing the cost basis and the fair market value of the donated inventory at the time it was donated. In this refund suit, Plaintiff bears the burden of establishing Debtor's entitlement to the deduction, including by showing the cost basis and fair market value of the donated inventory.

Plaintiff has made no such showing here.[7] To the extent that Plaintiff seeks to rely on the allegation that the IRS did not question these items when it conducted its audit of Debtor for the years at issue, or when it denied the claims for refund for those years, that argument is irrelevant. That is because, in a suit for refund, the United States is entitled to defend against the refund claim on any ground for which there is a factual or legal basis. *Slovacek v. United States*, 40 Fed. Cl. 828, 831 (1998); *see also R.H. Donnelley Corp. v. United States*, 641 F.3d 70, 74 (4th Cir. 2011). And "the ultimate question" in a refund suit "is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability." *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932). "In such cases, the court undertakes a *de novo* review of the tax decision, because 'a tax refund suit is not an appellate review of the administrative decision that was made by the IRS.'" *Mann v. United States*, 364 F. Supp. 3d 553, 560 (D. Md. 2019), *aff'd,* 984 F.3d 317 (4th Cir. 2021) (quoting *Wells Fargo & Co. and Subs. v. United States*, 91 Fed. Cl. 35, 75 (2010) and citing *Lewis v. Reynolds*, 284 U.S. at 283).

Ultimately, in a refund suit, the taxpayer bears the burden of proof to establish "the exact dollar amount of the alleged overpayment to which it claims a refund." *Sara Lee Corp. v. United States,* 29 Fed.Cl. 330, 334 (1993) (citing *United States v. Janis,* 428 U.S. 433, 440 (1976); *Missouri Pac. R.R. v. United States,* 168 Ct. Cl. 86, 338 F.2d 668, 671 (1964)). Inasmuch as Plaintiff has failed to submit evidence in admissible form substantiating each item required by the Code and the Treasury Regulations, Plaintiff has failed to carry his burden and the court should deny the refund claim.

---

[7] Plaintiff turns to the preamble to Treas. Reg. § 1.170A-4A(b)(4), which he contends disproves the Service's position regarding what is required to prove entitlement to the deduction at issue. But, as Plaintiff acknowledges, that preamble concerns the -4A regulation, which applies to the Enhanced Method for calculating the deduction, not the Basic Method that was used in Debtor's claim for refund. As such, that preamble does not support the refund claim at issue here.

**III.**    **If the Court is not inclined to deny Debtor's refund claim upon application of the Election Doctrine or upon Debtor's failure to substantiate its claimed computation of the charitable contribution deduction, the Court should defer consideration of Plaintiff's motion under Federal Rule of Civil Procedure 56(d).**

"It is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (internal citations and quotations omitted). The Third Circuit has stated that "where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir. 1977) (citation omitted). Federal Rule of Civil Procedure 56(d) allows a party to avoid summary judgment if they show, by affidavit or declaration, that there are specified reasons why they cannot present facts essential to justify its opposition. Fed. R. Civ. P. 56(d). To prevail on a motion under Rule 56(d), the nonmoving party should: "(1) identify the alleged evidence, (2) how they would preclude summary judgment, and (3) why that party had not previously obtained such evidence." *ERISA Indus. Comm. v. Asaro-Angelo*, 2023 WL 2034460 (D.N.J. Feb. 16, 2023) (citations omitted).

Here, Plaintiff seeks tens of millions of dollars of refunds based on charitable contribution deductions and has moved for summary judgment. As noted above, the Supreme Court has stated that "the ultimate question" in a refund suit "is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability." *Lewis*, 284 U.S. at 283. As such, the facts underlying Debtor's entitlement to the refunds it claims are essential to this litigation. Specifically, the United States must obtain facts showing whether Debtor can substantiate the elements of the charitable contribution deduction comprising its refund claim required by section 170(e)(1) and the regulations promulgated thereunder. This includes substantiating the fair market value and cost basis of the donated property, the amount of cost of

19

goods sold, the nature of the donee organizations who received the donated property and facts surrounding those transactions, and whether the donated property was acquired in the same taxable year as it was donated, or a different year. If Plaintiff is unable to substantiate Debtor's claimed deduction, Debtor will not be entitled to the refunds it seeks and the Court cannot grant summary judgment for Plaintiff.

The United States could not produce these facts here because they are in possession of Plaintiff or Debtor. The United States issued discovery requests to Plaintiff but has not yet received Plaintiff's responses. (ECF No. 50-3, ¶¶ 14, 16.) And the United States' deadline to complete discovery has not yet passed. (*Id*., ¶ 13.) The United States' discovery requests seek the information described above that is required for Debtor to be entitled to the refunds it seeks. (*Id*., ¶ 15.)

Thus, the United States has met its burden under Rule 56(d). The United States has shown that the necessary facts are in the possession of the moving party; thus, in accordance with *Costlow*, the Court should defer the motion to allow for discovery "almost as a matter of course." 552 F.2d at 564. Indeed, the United States has outlined the particular facts needed to justify its opposition and why they are essential. The United States has further demonstrated that it cannot produce these facts at this time, but it has already served discovery requests aimed at acquiring these facts. The Court should grant the United States' Rule 56(d) request and deny or defer the pending motion for summary judgment.

**CONCLUSION**

Debtor's claim for refund is barred by the Election Doctrine, as Debtor cannot unilaterally change its method of computing the deduction at issue, from the Enhanced Method to the Basic Method. If Debtor's claim for refund is not barred, it fails for lack of substantiation.

In the alternative, the Court should grant the United States' request for relief under Rule 56(d)

and defer ruling on summary judgment until the United States is able to discover the essential

facts supporting Debtor's entitlement to the claimed charitable contribution deduction.


Date: April 7, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General,
Tax Litigation Branch

*/s/ Robert J. Atras*
Robert J. Atras
Trial Attorney, Civil Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C., 20044
Telephone: (202) 598-3738
Fax: (202) 514-6866
Robert.J.Atras@usdoj.gov
*Counsel for Defendant*