ROBERT J. ATRAS
Trial Attorney, Civil Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
Telephone: (202) 598-3738
Fax: (202) 514-6866
Robert.J.Atras@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re | : | |
| | : | |
| 20230930-DK-BUTTERFLY-1, INC. f/k/a/ | : | Chapter 11 |
| | : | |
| Bed Bath & Beyond, Inc., et. al., | : | Case No. 23-13359 (VFP) |
| | : | |
| Debtors. | : | |
| | : | |
| MICHAEL GOLDBERG as | : | |
| Plan Administrator for 20230930-DK- | : | |
| BUTTERFLY-1, INC. f/k/a | : | |
| Bed Bath & Beyond Inc., | : | Adv. Pro. No. 2:24-ap-1533 |
| | : | |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| INTERNAL REVENUE SERVICE, | : | |
| Agency of the United States of America | : | |
| | : | |
| Defendant. | : | |

**RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

**I.       Request for Relief under Federal Rule of Civil Procedure 56(d).**

Pursuant to Federal Rule 56(d), the United States has requested that the Court deny or

defer consideration of Plaintiff's motion for summary judgment until after the United States has

had an opportunity to conduct discovery essential for it to determine its opposition to the facts

asserted by Plaintiff. (ECF Nos. 50-1 at 18, 50-5.)

1

**II.      Response to Plaintiff's Statement of Material Facts Not in Dispute.**

In accordance with Local Rule 7056-1(a), the United States addresses each paragraph of

Plaintiff's Statement of Material Facts Not in Dispute below. However, the United States objects

to all facts[1] proffered by Plaintiff that rely solely on the Declaration of Laura Crossen because

the Declaration states that the asserted facts are based on one or more of four sources, only one

of which is Ms. Crossen's personal knowledge (Crossen Decl., ¶ 3), but does not identify which

paragraphs are based on her personal knowledge. As such, the United States is unable to

determine which paragraphs are admissible in this Court.

Declarations used to support a motion for summary judgment "must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Indeed, fact

witnesses may only testify to matters on which they have personal knowledge. Fed. R. Evid. 602.

However, Ms. Crossen declares that the asserted facts are based on, *inter alia*, "information

provided to [her] by, or discussions with, other consultants who work for the Plan Administrator,

[and/or] the Plan Administrator's Professionals (including the Claims Agent)[.]" (Crossen Decl.,

¶ 3.) Although the Court has discretion in determining whether Ms. Crossen has sufficient

personal knowledge to admit her testimony, *United States v. Lake*, 150 F.3d 269, 273 (3d Cir.

1998), witness testimony has been held inadmissible where, as here, it is based on information

learned from unidentified third parties. *See Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, 2015

WL 1963170, at *5 (M.D. Pa. 2015) (citation omitted). To the extent a witness's knowledge is

based on information learned through discussions with other individuals, the witness's

statements constitute inadmissible hearsay, which is not permitted to support a motion for

---

[1] In good faith, assertions of fact relying solely on the Crossen Declaration but which are verifiable by the United States are marked as undisputed below.

summary judgment. *BMG Music v. Martinez*, 74 F.3d 87, 90 n.18 (5th Cir. 1996); *De Simone v. VSL Pharms., Inc.*, 352 F. Supp. 3d 471, 482-83 (D. Md. 2018) (citing Fed. R. Evid. 801(c), 802 (stating that, except in certain situations not present here, hearsay is inadmissible at trial); Fed. R. Civ. P. 56(c)(2) (stating that parties may object to evidence submitted on summary judgment on the basis that it "cannot be presented in a form that would be admissible in evidence"); *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (stating that Rule 56 requires that "affidavits submitted on summary judgment contain admissible evidence" and thus that they cannot be "based on hearsay"); *Md. Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251–52 (4th Cir. 1991) (stating that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment"). The Local Rules for the United States District Court for the District of New Jersey, which hears appeals from this Court, align with these requirements, providing that: "[a]ffidavits, declarations, certifications and other documents of the type referenced in 28 U.S.C. § 1746 shall be restricted to statements of fact within the personal knowledge of the signatory." LCvR 7.2(a). "Any certification, or portion of a certification, that violates this rule must be disregarded by the court." *Pasqua v. Cnty. of Hunterdon*, 2016 WL 4253958, at *7 (D.N.J. 2016), *aff'd*, 721 F. App'x 215 (3d Cir. 2018) (citing *Fowler v. Borough of Westville*, 97 F.Supp. 2d 602, 607 (D.N.J. 2000) (holding that courts may disregard statements in affidavit which are not based on personal knowledge)). As such, any paragraphs below relying solely on the Crossen Declaration should be disregarded.

**A.      General Case Background**

1.      On April 23, 2023 (the "Petition Date"), the Debtors filed a voluntary petition for relief (the "Petition") (Doc. 1) under Chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession

3

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until the Effective Date of the

Plan (each, as defined below). No trustee or examiner has been appointed in this case.

**Response**: Undisputed.

2.       On September 14, 2023, the Court entered the *Findings of Fact, Conclusions of

Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming

the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor

Affiliates* [Doc. 2172], confirming the *Second Amended Joint Chapter 11 Plan of Bed Bath &

Beyond Inc. and Its Debtor Affiliates* (Doc. 2160) (as amended, the "Plan").

**Response**: Undisputed.

3.       On September 29, 2023, the effective date of the Plan occurred (the "Effective

Date"). *See* Docket No. 2311. On the Effective Date, the Plan Administrator became the sole

representative of the Debtors and assumed responsibility for, *inter alia,* investigating,

prosecuting and compromising any and all of the Debtors' claims and causes of action. *See,

e.g.,* Plan at Art. IV.F, VII.A.

**Response**: Undisputed.

**B.       BBB's Charitable Donation Program**

4.       Prior to the commencement of these bankruptcy cases, BBB was a leading retailer

that operated retail stores and e-commerce websites throughout the United States.

(Declaration of Laura Crossen ("Crossen Decl.") filed contemporaneously with this Motion

at ¶ 4).

**Response**: Undisputed.

5.       BBB regularly donated unsold merchandise to charitable organizations benefiting

the poor, needy and ill. (Crossen Decl. ¶ 5). BBB had written operating procedures for its

4

merchandise charitable contribution program which were utilized by all retail stores. (*Id*.) A

copy of these written procedures are attached to the Crossen Declaration as Exhibit A.

**Response**: Disputed. The Crossen Declaration states that it is her "belief" that the procedures

contained in Exhibit A, dated 2012, remained "substantially the same" during the years ending

March 2018 and March 2019. However, statements in declarations that are based on belief or on

information and belief may not be considered in support of or in opposition to summary

judgment. *United States v. Rocky Mountain Holdings, Inc.*, 782 F. Supp. 2d 106, 114 (E.D. Pa.

2011) (citation omitted). Further, the remaining facts in this paragraph, relying solely on the

Crossen Declaration, are not properly based on personal knowledge and are thus inadmissible.

6.      In 2001, BBB formed a partnership with Good360 (formerly known as Gifts In

Kind International), a non-profit organization based in Alexandria, Virginia, to formalize a

charitable donation program that enabled BBB to provide product donations to those most in

need. (Crossen Decl. ¶ 6). Through this program, BBB donated items from participating

stores to local 501(c)(3) charities across the United States, Canada and Puerto Rico. (*Id*.)

These donations provided relief and assistance to individuals for situations such as relief for

victims of natural disasters, transitional housing needs for families in crisis, needs for youth

in low income situations and support for mentally and physically disabled individuals. (*Id*.).

**Response**: Disputed. The United States has not received responses to its formal discovery

requests to Plaintiff that would allow it justify opposition to the facts asserted in this paragraph

(ECF No. 50-5); as such, the Court should deny or defer consideration of Plaintiff's motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56(d). Further, as explained

above, because the facts in this paragraph rely solely on the Crossen Declaration, which is not

properly based on personal knowledge, the facts in this paragraph are inadmissible.

7.      BBB entered into an agreement with Good360 to manage its charitable donation program. (Crossen Decl. ¶ 7). A sample copy of the agreement with Good360 is attached to the Crossen Declaration as Exhibit B. Good360 would coordinate with local charities and BBB's retail stores for the pickup and delivery of donated goods. (*Id*.) A sample retail donation authorization form reflecting a sample donation of merchandise to the National Veterans Foundation in Los Angeles, California is attached as Exhibit C to the Crossen Declaration.

**Response:** Disputed. The Crossen Declaration states that it is her "belief" that the form attached as Exhibit C, dated 2010, remained "substantially the same" during the years ending March 2018 and March 2019. Statements in declarations that are based on belief or on information and belief may not be considered in support of or in opposition to summary judgment. *Rocky Mountain Holdings*, 782 F. Supp. 2d at 114. Further, the remaining facts in this paragraph, relying solely on the Crossen Declaration, are not properly based on personal knowledge and are thus inadmissible

8.      According to BBB's 2018 and 2019 Corporate Responsibility Reports, which were provided to its shareholders and published on its website, BBB estimated its product donations to have a fair market value of $170 million and $40 million, respectively. (Crossen Decl. ¶ 8). BBB was recognized by Good360 for its outstanding corporate citizenship and effective product philanthropy. (*Id*.)

**Response**: Disputed. The facts in this paragraph, relying solely on the Crossen Declaration, are not properly based on personal knowledge and are thus inadmissible. Further, the United States has not received responses to its formal discovery requests to Plaintiff that would allow it justify opposition to the facts asserted in this paragraph (ECF No. 50-5); as such, the Court should deny

or defer consideration of Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d).

9.    The items BBB donated consisted of two groups of merchandise: (i) items that had been processed through the return-to-vendor ("RTV") program or as a freight claim; and (ii) "as is" merchandise placed in the sellable category that did not sell in a 14-day period. (Crossen Decl. ¶ 9). In both groups, prior to donating, the merchandise was properly removed from inventory and reclassified in another account on BBB's books, ensuring it was not recorded as opening inventory. (*Id.*)

**Response**: Disputed. The facts in this paragraph, relying solely on the Crossen Declaration, are not properly based on personal knowledge and are thus inadmissible. Further, the United States has not received responses to its formal discovery requests to Plaintiff that would allow it justify opposition to the facts asserted in this paragraph (ECF No. 50-5); as such, the Court should deny or defer consideration of Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d).

10.    As a result, all items processed through the RTV or freight claim process were marked out of stock as soon as they were deemed non-saleable merchandise, and therefore such items were not included in opening inventory even if they were still physically present in BBB stores or storage at year-end. (Crossen Decl. ¶ 10).

**Response**: Disputed. The facts in this paragraph, relying solely on the Crossen Declaration, are not properly based on personal knowledge and are thus inadmissible.

### C.    BBB's Original Tax Returns.

11.    BBB timely filed Form 1120, *U.S. Corporation Income Tax Return* (the "2018 Tax Return") for its taxable period ending March 3, 2018 (the "2018 Tax Year"). (Crossen Decl. ¶ 11).

**Response:** Undisputed.

12.     BBB timely filed Form 1120, *U.S. Corporation Income Tax Return* (the "2019 Tax Return") for its taxable period ending March 2, 2019 (the "2019 Tax Year"). (Crossen Decl. ¶ 12) The 2018 Tax Return and 2019 Tax Return are collectively referred to as the "Original Tax Returns" and the 2018 Tax Year and 2019 Tax Year are collectively referred to as the "Tax Years".

**Response:** Undisputed.

13.     On the Original Tax Returns, BBB claimed enhanced charitable contributions deductions for charitable contributions of inventory made during the Tax Years pursuant to § 170(e)(3) of the IRC. (Crossen Decl. ¶ 13). Due to the charitable contribution limitation of 10% of taxable income, BBB was not able to fully deduct the charitable contributions it made on the Original Tax Returns. (*Id.*)

**Response:** Undisputed.

14.     Prior to the Tax Years, the IRS conducted an examination of BBB's taxable year ending February 28, 2016 (the "Prior Examination"), as a result of which the IRS and BBB entered into a Memorandum of Understanding explained on Form 886-A pursuant to which the IRS allowed the charitable contribution deductions subject to certain adjustments to the enhanced valuation of BBB's charitable contributions for such taxable year. (Crossen Decl. ¶ 14).

**Response:** Undisputed.

15.     As a result of the Prior Examination, the IRS reviewed BBB's current charitable contribution deduction for the 2018 Tax Year and made corresponding adjustments to the

8

return to apply a similar valuation methodology to that agreed upon in the Prior Examination. (Crossen Decl. ¶ 15)

**Response:** Undisputed.

16.    The IRS adjusted the non-cash current charitable deduction by $10,130,982 for the 2018 Tax Year. (Crossen Decl. ¶ 16). The IRS made no further adjustments to BBB's current charitable contributions for these periods. (*Id.*)

**Response:** Undisputed.

### D.    BBB's Amended Returns/Refund Claims Filed With IRS

17.    On December 15, 2022, BBB timely filed Form 1120X, *Amended U.S. Corporation Income Tax Return*, for the 2018 Tax Year, representing BBB's refund claim for that period (the "2018 Refund Claim"). (Crossen Decl. ¶ 17). A copy of the 2018 Refund Claim is attached to the Crossen Declaration as Exhibit D.

**Response:** Undisputed.

18.    On Form 1125-A (Cost of Goods Sold) attached to its 2018 Refund Claim, BBB increased its cost of goods sold in the amount of $85,157,520 to reflect the cost basis of donated inventory. The beginning inventory of $2,800,263,882 and purchases of $9,077,421,012 did not change. (Crossen Decl. ¶ 18 and Ex. D).

**Response:** Undisputed that Debtor increased its cost of goods sold in the amount of $85,157,520 and that beginning inventory of $2,800,263,882 and purchases of $9,077,421,012 did not change. Disputed that $85,157,520 reflects the cost basis of donated inventory, as such factual assertion relies solely on the Crossen Declaration, which is not properly based on personal knowledge and thus inadmissible. Further, the United States has not received responses to its formal discovery requests to Plaintiff that would allow it justify opposition to such fact (ECF No. 50-5); as such,

the Court should deny or defer consideration of Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d).

19.    The 2018 Refund Claim made a corresponding reduction of the charitable contribution deduction in the amount of $8,275,882. (Crossen Decl. ¶ 19 and Ex. D).

**Response:** Undisputed.

20.    The 2018 Tax Return and the 2018 Refund Claim confirm that the opening inventory was $2,800,263,882 and the inventory at the end of the year was $2,700,252,851. (Crossen Decl. ¶ 20 and Ex. D). Thus, BBB disposed (either by sale or donation) of substantially all of its inventory purchases during the 2018 Tax Year. (*Id.*)

**Response:** United States has not received responses to its formal discovery requests to Plaintiff that would allow it justify opposition to the facts asserted in this paragraph (ECF No. 50-5); as such, the Court should deny or defer consideration of Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d).

21.    The 2018 Refund Claim sought a refund of overpaid income tax in the amount of $13,637,620, plus accrued interest (the "2018 Refund"). (Crossen Decl. ¶ 21 and Ex. D).

**Response:** Undisputed.

22.    The attachment to the 2018 Refund Claim stated, in relevant part:

Form 1120X, Page 1, Line 1 – Total Income:

The reduction in total income of $85,157,520 represents the cost of product donations that is currently deductible by Bed Bath & Beyond Inc. and Subsidiaries ("taxpayer") pursuant to the provisions of IRS Notice 2008-90.

\* \* \*

The taxpayer is relying on Notice 2008-90 guidance that permits a taxpayer who makes donations during a taxable year, that qualify for the enhanced deduction under IRC Sec 170(e)(3), to elect whether to apply to some or all of such donations made during a taxable year, the special rules pursuant to IRC Sec. 170(e)(3) and the regulations thereunder (Treas. Reg. § 1.170A-4A) or, alternatively, apply the "general section 170 rules" in Treas. Reg. § 1.170A-1(c)(4) so that costs incurred in the year of contribution with respect to donated property, remain embedded in

COGS (thereby increasing the COGS deduction and reducing income) and would be deductible under IRC §162.

(Crossen Decl. ¶ 22 and Ex. D, p. 4).

**Response:** Undisputed.

23.     On May 25, 2023, BBB timely filed Form 1120X, *Amended U.S. Corporation Income Tax Return*, for the 2019 Tax Year, representing BBB's refund claim for that period (the "2019 Refund Claim" and, together with the 2018 Refund Claim the "Refund Claims"). (Crossen Decl. ¶ 23). A copy of the 2019 Refund Claim is attached to the Crossen Declaration as Exhibit E.

**Response:** Undisputed.

24.     On Form 1125-A (Cost of Goods Sold) attached to its 2019 Refund Claim, BBB increased its cost of goods sold in the amount of $19,960,271 to reflect the cost basis of donated inventory. (Crossen Decl. ¶ 24 and Ex. E). The beginning inventory of $2,700,252,851 and purchases of $8,719,431,862 did not change. (*Id.*)

**Response:** Undisputed that Debtor increased its cost of goods sold in the amount of $19,960,271 and that the beginning inventory of $2,700,252,851 and purchases of $8,719,431,862 did not change. Disputed that $19,960,271 reflects the cost basis of donated inventory, as such factual assertion relies solely on the Crossen Declaration, which is not properly based on personal knowledge and thus inadmissible. Further, the United States has not received responses to its formal discovery requests to Plaintiff that would allow it justify opposition to such fact (ECF No. 50-5); as such, the Court should deny or defer consideration of Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d).

25.     The 2019 Refund Claim made a corresponding reduction of the charitable contribution deduction in the amount of $30,051,947. (Crossen Decl. ¶ 25 and Ex. E).

**Response:** Undisputed.

26.     The 2019 Tax Return and the 2019 Refund Claim confirm that the opening inventory was $2,700,252,851 and the inventory at the end of the year was $2,512,666,849. (Crossen Decl. ¶ 26). Thus, BBB disposed (either by sale or donation) of substantially all of its inventory purchases during the 2019 Tax Year. (*Id*.)

**Response:** The United States has not received responses to its formal discovery requests to Plaintiff that would allow it justify opposition to the facts asserted in this paragraph (ECF No. 50-5); as such, the Court should deny or defer consideration of Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d).

27.     The 2019 Refund Claim sought refund of overpaid income tax in the amount of $9,352,953, plus accrued interest (the "2019 Refund" and, together with the 2018 Tax Refund, the "Refunds"). (Crossen Decl. ¶ 27).

**Response:** Undisputed.

28.     The attachment to the 2018 Refund Claim stated, in relevant part

Form 1120X, Page 1, Line 1 – Total Income:

The reduction in total income of $19,960,271 represents the cost of product donations that is currently deductible by Bed Bath & Beyond Inc. and Subsidiaries ("taxpayer") pursuant to the provisions of IRS Notice 2008-90.

* * *

The taxpayer is relying on Notice 2008-90 guidance that permits a taxpayer who makes donations during a taxable year, that qualify for the enhanced deduction under IRC Sec 170(e)(3), to elect whether to apply to some or all of such donations made during a taxable year, the special rules pursuant to IRC Sec. 170(e)(3) and the regulations thereunder (Treas. Reg. § 1.170A-4A) or, alternatively, apply the "general section 170 rules" in Treas. Reg. § 1.170A-1(c)(4) so that costs incurred in the year of contribution with respect to donated property, remain embedded in COGS (thereby increasing the COGS deduction and reducing income) and would be deductible under IRC §162.

(Crossen Dec. *[sic]* ¶ 28 and Ex. E at p. 3).

**Response:** Undisputed.

12

29.     During its audit of the Refund Claims, the Debtor produced to the IRS the workpapers and financial records supporting the original and amended returns, which demonstrate unequivocally that any donated items were removed from cost of goods sold in the Original Tax Returns. (Crossen Decl. ¶ 29).

**Response:** Disputed. This factual assertion relies solely on the Crossen Declaration, which is not properly based on personal knowledge and thus inadmissible. Further, the United States has not received responses to its formal discovery requests to Plaintiff that would allow it justify opposition to the facts asserted in this paragraph (ECF No. 50-5); as such, the Court should deny or defer consideration of Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d),

30.     The Refund Claims were filed to remove the enhanced benefit for the charitable contributions for donated inventory and instead claim the cost basis deduction. (Crossen Decl. ¶ 30)

**Response:** Undisputed.

31.     The Refund Claims otherwise conformed to the valuation agreed upon between BBB and the IRS in the Prior Examination. (Crossen Decl. ¶ 31).

**Response:** Disputed. This factual assertion relies solely on the Crossen Declaration, which is not properly based on personal knowledge and thus inadmissible. Further, the United States has not received responses to its formal discovery requests to Plaintiff that would allow it justify opposition to the facts asserted in this paragraph (ECF No. 50-5); as such, the Court should deny or defer consideration of Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d).

32.      On March 26, 2024, the IRS issued two notices of disallowance (the "Notices of Disallowance"), disallowing the Refund Claims in full. (Crossen Decl. ¶ 32). Copies of the Notices of Disallowance are attached to the Crossen Declaration as Exhibit F.

**Response:** Undisputed.

33.      According to the Notices of Disallowance, the IRS disallowed both Refund Claims because the "IRS believes that [Taxpayer] irrevocably elected the enhanced method for computing the charitable contribution deduction under IRC § 170(e)(3). Elective choices are binding after the period for filing expires and can only be changed thereafter with the consent of the Commissioner (*Pacific Nat'l Co. v. Welch*, 304 U.S. 191 (1938))." (Crossen Decl. ¶ 33 and Ex. F, p. 3). Additionally, according to the Notices of Disallowance, the IRS disallowed both Refund Claims because BBB did not provide sufficient facts to show that the merchandise donated to charity was acquired and donated in the same year. (*Id*. at p. 4).

**Response:** Undisputed.

34.      As stated above, the IRS ***already reviewed*** the original 2018 Tax Return and 2019 Tax Return and only made minor adjustments to the enhanced valuation amount originally claimed charitable deductions. (Crossen Decl. ¶ 34). The IRS did not dispute that the goods donated by BBB qualified as charitable contributions under the Code. (*Id*.)

**Response:** Undisputed.

35.      The statute of limitations for the assessment of additional taxes for the 2018 and 2019 tax years has expired. (Crossen Decl. ¶ 35).

**Response:** This paragraph is a conclusion of law, which the Local Rules of this Court do not permit to be included in a statement of undisputed material facts. *See* D.N.J. LBR 7056-1.

**E.      Procedural Background**

36.     The Plan Administrator filed this adversary proceeding on August 16, 2024 against the IRS for turnover of the Refund Claims and a declaratory judgment that the Debtors are entitled to payment of the Refund Claims.

**Response:** Undisputed.

37.     On October 18, 2024, the IRS filed a motion to dismiss the Plan Administrator's Complaint (Doc. 14).

**Response:** Undisputed.

38.     Following the hearing conducted by this Court on November 13, 2024, the Court denied the Motion to Dismiss and determined with prejudice that the Refund Claims were valid claims (Doc. 24).

**Response:** Undisputed.

39.     On February 11, 2025, the Plan Administrator filed an Agreed Motion for Leave to File Amended Complaint to address some of the issues raised in the IRS's Motion to Dismiss (Doc. 30). The Court granted the Motion for Leave to File Amended Complaint by order dated March 4, 2025 (Doc. 33).

**Response:** Undisputed.

40.     The IRS filed its Answer to the Amended Complaint on April 9, 2025 (Doc. 37).

**Response:** Undisputed.

41.     On August 19, 2025, the Court entered a Mediation Order (Doc. 42) appointing Anthony Sodono as mediator and directing the parties to make a good faith attempt to settle this proceeding. The mediation was held on September 11, 2025. The mediation was unsuccessful.

**Response:** Undisputed.